McAffee *v.* Lynch et al.

---

MORGAN McAFFEE *v.* CHARLES LYNCH et al.

The doctrine of relation is equally recognized at common law as in equity, and all the several parts and ceremonies necessary to complete a conveyance, shall be taken together as one act, and operate from the substantial part by relation.

A party coming into a court of equity for relief, must stand upon his own equitable title, and the want of such title, or the establishment of a legal title, by virtue of which he can recover in a court of law, may, in either case, be sufficient reason to deny him equitable relief.

ON appeal from the superior court of chancery; Hon. Charles Scott, chancellor.

This was a bill filed in the superior court of chancery by Charles Lynch and others against Morgan McAffee, to vacate and set aside a land certificate for the north half of section fourteen, township sixteen, range one west, issued by the proper officer of the land-office, at Mount Salus, under the act of Congress granting land for the relief of Jefferson College, and which certificate was issued to McAffee, on the 16th of August, 1834. The complainants, Lynch and others, claimed title to the land as assignees of Forbes Leflore, a Choctaw Indian, to whom a half section of land to be located on any unoccupied land in the district in which he lived, was granted by the treaty of Dancing Rabbit Creek, on the 28th of September, 1830. The complainants had become the owner of this reservation of land as early as 1832, and one of complainants, some time during the year 1833, applied to the locating agent, for the purpose of locating the land in controversy under their reservation, from

22 *

the said Indian, but the agent refused to make the location, on the ground that he had not opened an office in that district.

It was in proof by Walton, a witness for McAffee, that the complainants (Lynch and others) told McAffee long before his entry of the land in dispute, that they, complainants, had located the Indian float, or reservation, on a different section of land from the land now in controversy. These are substantially the facts and circumstances of the case.

The court below decreed in favor of Lynch and others, and McAffee prayed and obtained an appeal to this court.

*Walker Brooke* for appellants.

*W. R. Miles* on the same side.

*W. Yerger* for appellees.

Mr. Justice FISHER delivered the opinion of the court.

The appellees filed their bill in the superior court of chancery for the purpose of obtaining a decree, vacating a certificate issued under the act of Congress for the relief of Jefferson College to the appellant, on the 16th of August, 1834, for the north half of section 14, township 16, range 1 west, by the proper officer of the land-office at Mount Salus.

The complainants claim title to this land as assignees of one Forbes Leflore, a Choctaw Indian, to whom a half section of land to be located on any unoccupied and unimproved land in the district in which he lived, was granted by the second article of the supplement to the treaty of Dancing Rabbit Creek, concluded the 28th of September, 1830, between the United States and the tribe of Choctaw Indians. Forbes Leflore was registered as a reservee under this article of the treaty, on the 19th of November, 1834; and his title to the land in question confirmed by the locating agent on that day. It appears, however, that the complainants had become the owners of this reservation as early as the year 1832, and that Sedley M. Lynch, one of the complainants, some time during the year 1833, applied to the locating agent for the purpose of locating the land under this

reservation; but that the agent refused to make the location on the ground that he had not opened an office in that district. The effort is now made to show that the complainants' title ought to relate back to this application, and upon this ground it is insisted that they have made out a claim for relief in a court of equity. If the doctrine of relation was not as well recognized in courts of law as in courts of equity, there might be great force in this position. But it is a doctrine equally recognized in both courts, " all the several parts and ceremonies necessary to complete a conveyance shall be taken together as one act, and operate from the substantial part by relation." 5 Cr. Dig. 511. The treaty in this case is the source of the Indian's title, the location is intended to give identity to the land granted; the two together, the treaty and location, constitute the title. The treaty being the source of title, must be treated as the substantial part of the transaction, to which the title itself will have relation when completed by a location of the land.

It will at once be perceived that this position is fatal to the complainants' right to relief in a court of equity. A party coming into this court for relief, must stand upon his equitable title. The want of such title, or the establishment of a legal title, by virtue of which he can recover in a court of law, may either be a sufficient reason to deny him equitable relief.

If the complainants have succeeded at all, it is in the establishment of a legal title which could avail them in a court of law. To succeed in establishing either, they have to invoke the doctrine of relation, by which they acquired a title to the land, before the appellant's entry. If they have not in this way acquired the legal title, it is clear from the whole case, they have shown no equity superior to the appellant. He is, equally with themselves, a fair and bonâ fide purchaser for valuable consideration, without notice of their claim. Indeed, as to the proof of notice, it is clear from the deposition of Walton, that the complainants had stated, long before the appellant's entry, that they had laid this same float or reservation upon a different section of land. It may be true that this gave the appellant no right at the time to make the entry on section 14, but it

must be admitted, that he could repose confidence in their statements, and make the entry at another time in good faith, without any apprehensions of this claim being arrayed a second time against him. The question is not whether the complainants' admissions in 1832, gave the appellant a right which he could not then under the treaty or lands of the United States enjoy, but whether two years thereafter, in November, 1834, he could still repose confidence in the statement, and relying upon it could safely invest his money in the purchase of the land. The proof on this subject is positive that McAffee, the appellant, was, in 1832, in the possession of part of section 24; that complainants stated then that they had laid this float on said section 24, and thus induced McAffee to abandon it, when he removed to the land now in controversy. As already remarked, the question is not whether they could at that time make a valid location, as no agent had been appointed by the government, or whether McAffee was an intruder in the Indian nation contrary to the terms of the treaty; but whether, when the land was subject to entry under his Jefferson College floats, he could retain a remembrance of the complainants' statements in regard to their location of Forbes Leflore's float on section 24, and could make an entry in good faith for north half of section 14.

Viewing the case in this light, we are of opinion that the complainants ought to be confined exclusively to their remedy at law. We therefore reverse the decree and dismiss the bill.

The appellees filed a petition for a reargument of this case which the court refused to grant.